NOT DESIGNATED FOR PUBLICATION

No. 119,614

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSE DELIRA JR.,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; TIMOTHY L. DUPREE, judge. Opinion filed June 14, 2019. Affirmed.

*R. Bruce Kips*, of Shawnee, for appellant.

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.


Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.


PER CURIAM: Before a person's driver's license is suspended for an alcohol test failure, a law enforcement officer must certify that he or she had reasonable grounds to believe that the person was operating a vehicle while under the influence of alcohol. K.S.A. 2018 Supp. 8-1002(a)(2).

Officer Kenneth Garrett arrested Jose Delira Jr. for driving under the influence of alcohol. Garrett certified the following reasonable grounds for believing Delira was operating a vehicle while under the influence of alcohol: (1) Delira's manner of driving; (2) the odor of alcohol; (3) bloodshot eyes; (4) slurred speech; (5) admission to drinking;

1

(6) failure of field sobriety tests; and (7) failure of a preliminary breath test (PBT). Delira's driver's license was suspended, and the district court affirmed the suspension. Delira appealed, challenging the evidence supporting each factor. A review of the record shows that substantial competent evidence supports the district court's finding that Garrett had reasonable grounds to arrest Delira for driving under the influence of alcohol.

FACTUAL AND PROCEDURAL HISTORY

Officer Garrett initiated a traffic stop at approximately 10:40 p.m. on May 28, 2016. The person driving the vehicle was Delira. Garrett initiated the stop because he observed two traffic violations: (1) driving left of the center lane and, (2) failing to stop at a stoplight. Garrett testified that he observed Delira cross the double yellow line dividing northbound and southbound traffic two times. The first time it happened, the video camera in Garrett's vehicle was not activated.

Garrett approached Delira's vehicle. He observed the odor of alcohol emanating from Delira's person. He also saw that Delira's eyes were bloodshot with a "little bit of redness." Garrett thought Delira had a "little bit" of difficulty speaking and that his "speech was a little thick and slurred." Garrett did not notice any open containers of alcohol in Delira's vehicle.

Garrett asked Delira to exit his vehicle. He asked Delira if he had been drinking, and Delira admitted to drinking five beers at home that night. At that point, Garrett asked Delira to perform standardized field sobriety tests. These tests included a one-leg stand and a walk-and-turn. Delira showed three clues of impairment on the walk-and-turn test. He started the test before Garrett finished the instructions, lost his balance once, and did an improper turn. Three clues constituted a failure of the test. Despite the failure, Garrett said that Delira did "[f]airly decent" on the test. Delira showed two clues of impairment during the one-leg stand. He swayed while balancing and used his arms for balance. A

2

person fails the one-leg stand if he or she shows two or more clues of impairment. After performing the field sobriety tests, Garrett waited 15 minutes and asked Delira to submit to a PBT. The PBT showed a blood alcohol content of greater than 0.08 percent. Garrett arrested Delira for driving under the influence of alcohol. Delira then failed an evidentiary breath test.

Delira requested an administrative hearing. Following the hearing, the Kansas Department of Revenue (KDOR) suspended Delira's driver's license for an alcohol test failure. Delira then filed a petition for review in the District Court of Wyandotte County. The district court affirmed the suspension.

Delira appealed.

ANALYSIS

Delira argues that Garrett did not have reasonable grounds to believe that Delira was operating a vehicle under the influence of alcohol. Garrett cited seven factors upon which he based his reasonable grounds determination:  (1) Delira's manner of driving; (2) the odor of alcohol; (3) bloodshot eyes; (4) slurred speech; (5) admission to drinking; (6) failure of field sobriety tests; and (7) failure of the PBT. Delira attacks the evidence supporting each of the cited factors. He concludes that under the totality of the circumstances, Garrett did not have reasonable grounds to believe that he was operating a vehicle under the influence of alcohol.

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. K.S.A. 77-601 et seq.; see K.S.A. 2018 Supp. 8-259(a); *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516-17, 213 P.3d 1061 (2009). Delira bears the burden of proving the invalidity of the agency action. See K.S.A.

3

2018 Supp. 77-621(a)(1) ("The burden of proving the invalidity of agency action is on the party asserting invalidity.").

Our standard of review in driver's license suspension cases is twofold. The district court's factual determinations are reviewed for substantial competent evidence. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.'" *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). Although we defer to the district court's factual findings if substantial evidence supports them, an appellate court must independently review, de novo, the ultimate legal conclusion regarding whether an officer had reasonable grounds. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, Syl. ¶ 1, 233 P.3d 286 (2010). This court does not reweigh evidence, make witness credibility determinations, or redetermine factual questions. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004).

Before the KDOR may suspend a person's driver's license for alcohol test failure, a law enforcement officer must certify that he or she had reasonable grounds to believe that the person was operating a vehicle while under the influence of alcohol when he or she requested the test. K.S.A. 2018 Supp. 8-1002(a)(2). Reasonable grounds are akin to probable cause. "Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that the defendant committed a specific crime. Probable cause does not require an officer have evidence of every element of the crime." *Smith*, 291 Kan. at 515. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006).

In disputing the existence of reasonable grounds, Delira individually examines the sufficiency of the evidence as to each of the factors the officer claims led to his

conclusion that Delira was operating a vehicle under the influence of alcohol. We will address each in turn.

*Traffic Infractions*

First, Delira argues that there was no evidence that he was driving left of the centerline on the road or that he failed to stop at a red light. A video of the stop was played to the district court and included in the record on appeal. Delira asserts that the video fails to support Garrett's testimony that Delira committed these traffic infractions.

Before the district court, Delira argued that the video shows that Garrett was too far away from Delira to observe whether he crossed the center of the road. He makes the same argument now on appeal—that "given the approximate distance of one football field between [Delira]'s vehicle and Garrett's vehicle, it is not reasonable to believe that Garrett could have seen [Delira] driving left of center." The district court rejected this argument, noting that there was no testimony elicited from Garrett regarding how far behind Delira he was when he viewed the infractions. The district court also noted that how far away something appears on camera is not always how far away it is when viewed in person. Thus, even if the infraction cannot be seen on the video, Garrett still could have seen it with his clearer vantage point. Regardless of the video, the district court added, Garrett viewed one instance of crossing the line before the video began.

Delira also argues, as he did below, that because the video is in black and white it was not possible to tell whether the light turned red before he went through it. Before the district court, Delira conceded that the top light of the traffic light was illuminated. The district court cited "common knowledge . . . that the top light typically is the red light." The district court had two bases for finding that Delira did not come to a complete stop at the red light:  Garrett's testimony and common knowledge that the top light is red. Delira did not present any evidence that would controvert the district court's findings.

5

The district court did not err by crediting Garrett's testimony that Delira committed traffic infractions. The video is very grainy, and the lanes of the road look muddled. Additionally, the headlights from oncoming traffic cause a glare that exacerbates the poor quality of the video. The scene was likely much clearer to Garrett. He had a clear view of Delira's vehicle and its position on the road. And, he had a clear view of whether Delira failed to stop at a red light. Due to the poor quality of the video, it can neither support nor undermine Garrett's testimony on this point.

In sum, there is substantial competent evidence to support the district court's reliance on traffic infractions in its reasonable grounds analysis. The district court had testimony that the traffic infractions occurred. The district court chose to place more weight on this testimony than on the video, which is of such poor quality that it is difficult to view any traffic infractions. This court cannot reweigh the evidence. *Mitchell*, 32 Kan. App. 2d at 301.

*Odor of Alcohol*

Next, Delira challenges the evidence regarding the odor of alcohol. He asserts that no evidence was offered regarding whether the odor was slight, moderate, or strong. He concludes that if the odor was slight, then the "evidence would carry little weight in concluding that Officer Garrett had reasonable grounds to believe that [he] was driving under the influence of alcohol." However, if Delira wished to argue that the odor was only slight it was his duty to elicit that testimony. Kansas courts have considered the odor of alcohol, without any description of whether the odor was strong or weak, in reasonable grounds analysis. See, e.g., *Poteet*, 43 Kan. App. 2d at 416 (indiscriminate odor of alcohol coupled with car going off the road was sufficient to support the reasonable grounds necessary to request a breath test); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431, 962 P.2d 1150 (1998) (indiscriminate odor of alcohol on defendant was a factor supporting the reasonable grounds necessary to request a breath

6

test). We find no error in the district court's consideration of the indiscriminate odor of alcohol as a basis for Garrett's reasonable grounds decision.

*Bloodshot Eyes*

Delira next argues that the district court should not have given any weight to Garrett's testimony that he had bloodshot eyes. Delira notes that there was no evidence regarding how long it had been since he had slept or how long he had slept the night before. While this is true, it does not invalidate the district court's reliance on this factor. Delira is essentially asking this court to reweigh the evidence, which is something that this court is prohibited from doing. See *Mitchell*, 32 Kan. App. 2d at 301. Delira also argues that "there is no evidence that having bloodshot eyes has anything to do with whether or not a person has been drinking. This is a myth, not real evidence, and has no weight" in the reasonable grounds determination. Delira did not present any evidence at the district court to support this assertion. And, as with the previous issue, Kansas courts routinely consider bloodshot eyes in the reasonable grounds analysis. See, e.g., *Smith*, 291 Kan. at 518; *Bixenman v. Kansas Dept. of Revenue*, 49 Kan. App. 2d 1, 6-7, 307 P.3d 217 (2013); *Campbell*, 25 Kan. App. 2d at 431.

*Slurred Speech*

Delira next argues that Garrett's testimony regarding slurred speech was inconsistent and that it should not factor into the reasonable grounds analysis. He notes that Garrett testified that Delira's speech "was somewhat slurred and a little bit difficult to understand." Delira's attorney then asked if Delira spoke fluent English. Garrett replied that Delira spoke English fairly well, and he understood Delira. Delira's attorney then asked: "So he did not have, in your opinion, difficulty in communicating with you?" Garrett replied that he did not believe Delira had difficulty communicating and "there was no issue of communications between him and I that night."

7

Delira uses Garrett's testimony that Delira did not have trouble communicating to support his argument that Delira's communications with Garrett should not contribute to the reasonable grounds analysis. But Delira's argument misses the context of the statement. Garrett was discussing Delira's ability to understand and communicate in English as opposed to Spanish. To Garrett, it seemed that Delira could effectively communicate in English. People can be fluent in the English language and still slur their speech. Additionally, assessing the weight of the evidence is in the purview of the district court, and this court does not reweigh the evidence. *Mitchell*, 32 Kan. App. 2d at 301.

*Admission to Drinking*

Delira points out that while he admitted to drinking five beers at home that night, Garrett did not ask him when he started drinking or when he took his last drink. He does not make an argument in this section, he simply recites the evidence. The district court was in the proper position to evaluate this evidence. Given that the stop occurred around 10:40 p.m. and Delira admitted he had been drinking that night, it would not be unreasonable for the district court to consider the admission in its reasonable grounds analysis.

*Failure of the Field Sobriety Tests*

Delira recounts the facts regarding the field sobriety tests, focusing on Garrett's testimony that he did "[f]airly decent" despite failing both the one-leg stand and the walk-and-turn. Delira also argues that he only showed one clue on the walk-and-turn test, not three. He makes a similar argument for the one-leg stand—that the video shows he only exhibited one clue instead of two. Delira concludes that the court should have given little, if any, weight in determining whether substantial competent evidence existed to find that reasonable grounds existed to believe he was operating his vehicle under the influence of alcohol.

8

As with the traffic infractions, the video is inconclusive on this point. Garrett had a better view of Delira during the field sobriety tests. Additionally, Garrett was trained to observe field sobriety tests and knew what to look for. Because the district court had Garrett's testimony and the testimony is not clearly controverted by the video, the district court's consideration of the failed field sobriety tests was supported by substantial competent evidence. Garrett's statement that Delira did "[f]airly decent" on the field sobriety tests goes to the weight of the evidence. As stated before, this court cannot reweigh the evidence. *Mitchell*, 32 Kan. App. 2d at 301.

*Failure of the PBT*

Finally, Delira argues that the PBT test was inadmissible because Garrett failed to adhere to the regulations governing administration of a PBT.

The Legislature authorized the Kansas Department of Health and Environment to adopt rules and regulations relating to preliminary breath tests. K.S.A. 65-1,107; *Leffel v. Kansas Dept. of Revenue*, 36 Kan. App. 2d 244, Syl. ¶ 3, 138 P.3d 784 (2006). An officer must show that he or she used testing procedures which "substantially complied with the procedures set out by the Kansas department of health and environment." K.S.A. 2018 Supp. 8-1020(h)(2)(F); *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122, 200 P.3d 496 (2009) ("K.S.A. 8-1020(h)(2)(F) only requires substantial compliance with the testing procedures set out by the KDHE, not strict compliance."). See K.S.A. 2018 Supp. 8-1012(e).

Garrett used an Intoxilyzer SD-5 to administer the PBT. Neither party provided the testing procedures for the SD-5 to the court. However, Garrett testified that the SD-5 procedures called for a 15-minute observation period to ensure that the person to be tested does not ingest any foreign substances. Garrett testified that he waited for at least 15 minutes before administering the PBT. There was some dispute at the hearing over

9

whether 15 minutes had actually elapsed, but the district court found that Garrett's testimony was sufficient. The PBT revealed a blood alcohol content over .08.

On appeal, Delira makes the same argument that he made to the district court: Garrett did not actually wait 15 minutes. The patrol vehicle video camera did not keep accurate time. So, to calculate the time of the deprivation period Garrett asked dispatch for the time he stopped Delira and then looked at his watch. Based on these numbers, he estimated that 16 to 17 minutes had elapsed between the time he stopped Delira and the time he arrested him. Garrett made contact with Delira shortly after stopping him, and he arrested him just after administering the PBT. These facts show that approximately 15 minutes elapsed prior to Garrett's administration of the PBT. Even if Garrett's calculation was not exact, it was enough to demonstrate substantial compliance with the protocol.

Delira also argues that Garrett did not observe him for the full deprivation period, citing Garrett's testimony that he went into his patrol vehicle to grab his ticket book. However, Delira omits Garrett's testimony that he "didn't go far" because he had "to keep [his] observation." This suggests that even though he stepped away from Delira, he was still observing him. This incident is viewable on the video. Delira is standing in front of the passenger side of the patrol vehicle. Garrett opens the passenger side door and grabs the ticket book. The whole incident lasts a few seconds. While Garrett did take his eyes off Delira for a brief moment, Delira was likely within Garrett's peripheral vision as he was only a few feet away from him. The brief nature of the incident supports the district court's finding that Garrett substantially complied with the PBT procedures.

*Totality of the Circumstances*

Courts look at the totality of the circumstances in determining whether there are reasonable grounds to believe that a person operated a vehicle under the influence of alcohol. See K.S.A. 2018 Supp. 8-1002(a)(2); *Hill*, 281 Kan. at 146. As we have outlined,

10

each factual finding relied on by the district court to reach its reasonable grounds finding had substantial competent evidence to support it.

Moreover, Kansas courts have found that similar facts amount to reasonable grounds. See *Smith*, 291 Kan. at 518-19 (holding that probable cause existed to believe the driver was operating his vehicle under the influence of alcohol where [1] the police officer smelled alcohol on driver's breath and in his truck; [2] driver had bloodshot and watery eyes; [3] driver admitted to having a few drinks that evening; [4] driver said his last drink was 30 minutes prior to the stop; [5] driver had an open container in his truck; [6] driver committed an error during prefield sobriety test; [7] driver presented two clues on walk-and-turn field sobriety test; [8] driver presented one clue on the one-leg-stand field sobriety test; and [9] driver failed the PBT); *Campbell*, 25 Kan. App. 2d at 431-32 (holding that probable cause existed to believe the driver was operating his vehicle under the influence of alcohol where [1] driver was driving 72 miles per hour in a 55-mile-per-hour zone; [2] it was 1:10 in the morning; [3] police officer smelled alcohol on driver's breath; [4] driver admitted to having a few drinks; and [5] driver's eyes appeared glazed and bloodshot).

Finally, our de novo review supports the district court's conclusion that the officer had reasonable grounds to believe Delira was unlawfully operating a vehicle under the influence of alcohol when the officer requested the evidentiary breath test.

Affirmed.